IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| IN RE PATRICIA GRAY | : | CIVIL ACTION NO. 11-4594 |
| | : | |

---

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| IN RE T. BARRY GRAY | : | CIVIL ACTION NO. 11-4595 |
| | : | |

## MEMORANDUM

**Padova, J.**                                                                **February 16, 2012**

Appellants T. Barry Gray and his wife, Patricia Gray, refused to leave their house after it had been foreclosed upon and sold.  After the purchaser of the house brought an action in ejectment against them, Patricia and Barry separately filed petitions for bankruptcy in the federal bankruptcy court, which resulted in an automatic stay of the action in ejectment.  In each bankruptcy case, the bankruptcy court refused to maintain the automatic stay and also issued an order prohibiting the Grays from filing additional bankruptcy petitions without the court's permission.

In these two appeals, the Grays challenge both the bankruptcy court's refusal to maintain the automatic stays and the court's injunctive orders.  At the same time, VRF REO, LLC ("VRF"), the current owner of the house, has filed a motion for injunctive relief in each case, seeking orders prohibiting the Grays from filing additional federal or state court actions.  For the following reasons, we affirm the bankruptcy court orders and deny VRF's motions for injunctive relief.

## I.     BACKGROUND

In February 2001, First Union National Bank began foreclosure proceedings against Thelma

Gray,[1] T. Barry Gray, and Patricia Gray, with respect to a home located at 141 7th Avenue, in Folsom, Pennsylvania (the "Property").  Years of litigation followed.  While the owner of the mortgage attempted to protect its interests in state court proceedings, the Grays filed numerous bankruptcy petitions in federal court, which, in turn, triggered automatic stays of the state court proceedings.  Eventually, the Property was sold in November 2007 via Sheriff's Deed to TCIF REO CIT, LLC ("TCIF").  In January 2008, TCIF commenced a state court action for ejectment against the Grays.

Barry then brought a federal court action against TCIF and other parties challenging the foreclosure and sale of the Property on constitutional grounds.  TCIF failed to respond to Barry's federal court complaint and, on November 24, 2010, Barry requested and obtained a default judgment against TCIF.  See Gray v. Martinez, Civ. A. No. 08-2603, 2011 WL 4389543, at *1 (E.D. Pa. Sep. 21, 2011) (describing the case's history).  Shortly thereafter, on February 17, 2011, TCIF sold the Property to its successor-in-interest, VRF, via Quit Claim Deed

In the meantime, on December 14, 2010, Barry filed for bankruptcy under Chapter 7.  Patricia filed for bankruptcy under Chapter 13 on April 25, 2011.  Both cases were assigned to Chief Judge Stephen Raslavich.  As a result of the bankruptcy filings, automatic stays prevented VRF from continuing the action in ejectment against the Grays that TCIF had commenced in January 2008.

The automatic stay in Barry's case was lifted on March 24, 2011, when the bankruptcy Trustee reported that Barry had no property to be distributed.  Thereafter, VRF filed a motion in Patricia's case to lift the automatic stay that was still in effect there.  In addition, because the Grays had filed multiple bankruptcy petitions over the years, which had repeatedly stymied creditors from

---

[1] Thelma is Barry's now-deceased mother.

enforcing their rights against the Property, VRF also filed motions in both cases to prohibit the Grays

from filing any more bankruptcy petitions without leave of the bankruptcy court.  On June 14, 2011,

Barry filed a motion for an extension of the automatic stay in his case, despite the fact that the stay

had already been lifted.

On June 15, 2011, Chief Judge Raslavich held a hearing in Barry's case to address VRF's

motion for an injunction.  At the hearing, Barry argued that VRF had no standing to file motions in

his bankruptcy action because the transfer of the Property from TCIF to VRF was a fraudulent

transfer under the Pennsylvania Uniform Fraudulent Transfers Act ("PUFTA"), 12 Pa. Cons. Stat.

Ann. § 5101 et seq.  Rejecting Barry's standing argument, Chief Judge Raslavich granted VRF's

motion in Barry's case, as well as its motion in Patricia's case, thereby enjoining both Barry and

Patricia from filing future bankruptcy petitions without prior court approval.

The order in Patricia's case also lifted the automatic stay that was still operative in her case.

In the order in Barry's case, the court refused to "extend" the stay in spite of Barry's motion for an

extension for the stay, noting that, contrary to Barry's suggestion in the very title of the motion, the

stay had already been lifted and, thus, could not be "extended."[2]

Both Patricia and Barry appealed the June 15 orders in their respective case.  Each takes issue

with the bankruptcy court's failure to maintain the automatic stays that were preventing VRF from

proceeding with the state court action in ejectment.  They again argue, based on PUFTA, that VRF

lacked standing to bring any motion to lift the stay, and also that the bankruptcy court erred in not

permitting the Trustee to examine the Debtor's Amended Statement of Financial Affairs when

deciding to lift the automatic stay.  They further argue that the bankruptcy court erred in limiting their

---

[2] After both stays were lifted, the action in ejectment continued and the Grays were finally
ejected from the Property.

ability to file further bankruptcy petitions.

VRF, as a "party in interest," has filed two motions for injunctive relief in this Court, one in each of the two appeals.  The motions for injunctive relief ask this Court to "enter an Order which dismisses any and all actions filed by the Grays . . . in the U.S. District Court for the Eastern District of Pennsylvania, in the Court of Common Pleas for Delaware County, and the Superior Court of Pennsylvania," and for the Court to "enjoin any further filings by the Grays . . . in this or any other federal or state court without first seeking leave" of this Court.  (VRF Mot. at 13, In re Patricia Gray, Civ. A. No. 11-4594; VRF Mot. at 14, In re T. Barry Gray, Civ. A. No. 11-4595.)

## II.    JURISDICTION

We have jurisdiction over both appeals pursuant to 28 U.S.C. § 158, which gives district courts jurisdiction to hear appeals from "final judgments, orders, or decrees" of bankruptcy courts. 28 U.S.C. § 158(a)(1).  The finality requirement for bankruptcy appeals is construed more broadly than the finality requirement for appeals to the circuit court.  See In re White Beauty View, Inc., 841 F.2d 524, 526 (3d Cir. 1988) (citations omitted).  An order lifting an automatic stay as to a particular piece of property is a final order, even though the order does not finalize the bankruptcy proceedings, "because the order ends this particular controversy" between debtor and creditor.  In re Comer, 716 F.2d 168, 172 (3d Cir. 1983).  An order imposing sanctions is also a final order.  See In re Armstrong, 304 B.R. 432, 434-35 (B.A.P. 10th Cir. 2004) (citing Mountain Am. Credit Union v. Skinner (In re Skinner), 917 F.2d 444, 446 (10th Cir. 1990) (per  curiam)).

## III.    STANDARD OF REVIEW

District courts and circuit courts review bankruptcy orders under the same standard.  See Fellheimer, Eichen & Braverman, P.C. v. Charter Techs. Inc., 57 F.3d 1215, 1223 (3d Cir. 1995) (citation omitted). We review a bankruptcy court's "'findings of fact for clear error and its legal

conclusions *de novo*.'" In re Jersey Tractor Trailer Training Inc., 580 F.3d 147, 153 (3d Cir. 2009) (quoting In re Pransky, 318 F.3d 536, 542 (3d Cir. 2003)). We review a bankruptcy court order lifting an automatic stay for abuse of discretion. In re Myers, 491 F.3d 120, 128 (3d Cir. 2007) (citations omitted). Likewise, we review a bankruptcy court's imposition of sanctions for abuse of discretion. See Fellheimer, 57 F.3d at 1223 (citations omitted). An abuse of discretion arises when the bankruptcy court's decision "'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000) (quoting Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 127 (3d Cir. 1993)).

## IV.   DISCUSSION

### A.   VRF's Standing

Both Patricia and Barry argue that VRF did not have standing to move for relief from the automatic stay, and thus the bankruptcy court did not have jurisdiction to enter an order. The record is clear, however, that VRF did not move to lift the stay in Barry's case. Rather, as the bankruptcy court explained in its June 15 order in Barry's case, the stay in that case was lifted automatically when the Trustee reported that Barry had no assets to distribute. Accordingly, Barry's argument in his appeal that VRF lacked standing to move to lift the stay in his case does not comport with the procedural history in his case. Accordingly, we do not address Barry's arguments in that regard any further.[3]

VRF did, however, move to lift the automatic stay in Patricia's case, and the bankruptcy court

---

[3] Barry has also filed a Motion to Stay in this Court asking us to stay the bankruptcy court's June 15 order in his case pending appeal, so as to restore the automatic stay in his case. He argues yet again that VRF did not have standing to move to lift the stay because it obtained ownership of the Property through a fraudulent transfer. However, as noted above, VRF did not file a motion to lift the stay in Barry's case, and, thus, Barry's asserted basis for staying the June 15 order is meritless. Therefore, we deny Barry's Motion to Stay the June 15 order.

granted that motion on June 15.  Patricia does not dispute that a party with a legal interest in a property has standing to move to lift an automatic stay that is preventing that party from pursuing a state court action with respect to the property.  See In re Alcide, 450 B.R. 526, 535-36 (Bankr. E.D. Pa. 2011) (noting that a mortgage holder seeking to foreclose on a property has standing to move for relief from an automatic stay because it has a legal interest in the property); see also Rocco v. J.P. Morgan Chase Bank, 255 F. App'x 638, 640-41 (3d Cir. 2007) (affirming order lifting automatic stay upon motion of owner of foreclosed property that was still in debtor's possession).

Rather, Patricia argues that VRF lacked standing because it did not have a legal interest in the Property insofar as the transfer of the Property from TCIF to VRF via Quit Claim deed was fraudulent under PUFTA.  PUFTA provides creditors a remedy when a debtor transfers property in an effort to avoid payment of a debt.  Under PUFTA, a transfer is "fraudulent as to a creditor" if (1) the debtor made the transfer "with the actual intent to hinder, delay or defraud" the creditor; or (2) the transfer was made without a reasonable exchange for value and the debtor had too much debt or an unreasonably small amount of assets.  12 Pa. Cons. Stat. Ann. § 5104.  If the transfer was fraudulent, the creditor can seek to avoid the transfer or may obtain an attachment against the asset. Id. § 5107.

Patricia argues that the Grays were creditors of TCIF as a result of the default judgment that Barry obtained against TCIF.  She further argues that TCIF transferred the Property to VRF for well below market value in an effort to protect the Property from the default judgment.  Even assuming for the sake of argument that Patricia is correct in this regard, it does not follow that VRF lacked standing to move to lift the stay.

Contrary to Patricia's assumption, a transfer that is fraudulent under PUFTA is not automatically void.  Indeed, PUFTA does not prevent the transferee in an allegedly fraudulent

transfer from initially obtaining a legal interest in the transferred property. See generally id. § 5107(a)(1) (discussing a creditor's remedies under PUFTA, including avoidance of the transfer, an attachment against the asset, and an injunction prohibiting the transferee from disposing of the property). Importantly, the transfer remains effective until the creditor affirmatively seeks relief under PUFTA and obtains a judgment setting aside the transfer. Id.; see also id. §§ 5108(b), (d) (referring to fraudulent transfers as being voidable).

Accordingly, even if the transfer from TCIF to VRF were fraudulent under PUFTA, VRF retained legal title to the property unless and until the Grays obtained a judgment setting aside the transfer. Furthermore, as long as VRF retained legal title, it had standing to seek to enforce that title. Although Barry brought an adversary proceeding in his bankruptcy case to set aside the transfer, this proceeding was still pending when VRF moved for relief from the stay in Patricia's case and when the bankruptcy court granted VRF relief from the stay. Thus, VRF retained legal title to the Property and had standing to seek relief from the stay that was preventing it from enforcing that legal title. We therefore reject Patricia's argument that the bankruptcy court lacked jurisdiction to set aside the stay.

B.     The Automatic Stay

Both Grays assert in the opening of their briefs that the bankruptcy court erred in not permitting the trustee an opportunity to examine Barry's Amended Statement of Financial Affairs before the court lifted the automatic stay.[4] Neither Barry nor Patricia addressed this issue in the body

---

[4] The Grays actually assert more vaguely that the bankruptcy court erred in failing to permit the trustee to consider "the Debtor's Amended Statement of Financial Affairs," without specifying in which case the Amended Statement was filed or specifying who filed the Statement. However, only Barry filed an additional Statement of Financial Affairs. Accordingly, we read both parties' briefs to be referring to that Statement.

of their respective briefs or argued why this issue warrants reversal of the bankruptcy court, and Patricia did not list this issue in her statement of issues for appeal.

Arguments not briefed in a bankruptcy appeal are generally waived. In re Trans World Airlines, Inc., 145 F.3d 124, 132-33 (3d Cir. 1998) (citing Fed. R. Bankr. R. 8010); see also Fed. R. Bankr. P. 8006 (requiring an issue to be listed in the statement of issues on appeal). Although we attempt to give *pro se* litigants the benefit of the doubt in most cases, in this circumstance, the factual and legal underpinning of the Grays' arguments are simply too unclear to permit us to address the issue without the benefit of their briefing.

While the record reflects that Barry filed a second Statement of Financial Affairs in his case, it nowhere reflects that the bankruptcy court prohibited the Trustee from examining that second Statement, or even indicates that the Trustee did not consider it. Moreover, neither party attempts to explain the relevance of the second Statement, i.e. what the Trustee should have learned from the Statement, and how that information was pertinent to the court's consideration of the automatic stay. Without such basic information, we are unable to understand, much less address, the issue that the Grays attempt to raise. We therefore find this issue to be waived.

C.      Order Requiring Leave to File Bankruptcy Petitions

The Grays argue that the bankruptcy court erred in requiring them to request leave before filing any further bankruptcy petitions. Bankruptcy Rule 9011 allows a bankruptcy court to impose sanctions for, *inter alia*, petitions presented in bad faith or for an improper purpose. See Fed. R. Bankr. P. 9011. Imposition of sanctions under the rule "'requires only a showing of objectively unreasonable conduct.'" In re Taylor, 655 F.3d at 282 (quoting Fellheimer, 75 F.3d at 1225) (applying Bankruptcy Rule 9011 and referring to it as the "equivalent" of Federal Rule of Civil Procedure 11). Sanctions under Rule 9011 can include an order requiring leave to file further

bankruptcy petitions. See In re Privitera, No. 03-14601, 2003 WL 21460027, at *4 (Bankr. E.D. Pa. June 12, 2003). Such an order is warranted if it "is necessary to maintain the integrity of the bankruptcy process and avoid burdening the court's docket with frivolous cases, thereby depleting valuable and limited court resources which could be channeled to meritorious cases." Id.

Patricia alone has filed at least five bankruptcy petitions in the Eastern District of Pennsylvania. See In re Patricia Gray, Bankr. No. 11-13269, Docket No. 46 (Motion to Dismiss) (Bankr. E.D. Pa.) (listing bankruptcy petitions). Moreover, at the June 15 hearing in Barry's case, Chief Judge Raslavich stated that the Grays together have filed at least eight petitions. (Tr. of 6/15/11 Hr'g ("Tr.") at 15, In re T. Barry Gray, Bankr. No. 10-30808.) We also note that, in Patricia's current bankruptcy case, the Trustee has filed a motion to dismiss, arguing that Patricia's serial filings and the lack of a feasible plan demonstrate that she is proceeding in bad faith. See In re Patricia Gray, Bankr. No. 11-13269, Docket No. 46.

At the June 15 hearing, Chief Judge Raslavich set forth the reasons that he found the injunctions at issue to be warranted. According to Judge Raslovich, the Grays had a habit of filing a bankruptcy petition every time they felt they were losing in a state court proceeding, so that the automatic stay of the bankruptcy case would prevent the state court proceedings from continuing. He described the Grays' actions as "abusive serial filings" and observed that there was an emerging pattern of bankruptcy filings used as "an attempt to forestall" the state court proceedings. (Tr. at 4, 8.) Instead of rebutting these assertions at the hearing, Barry merely responded by reiterating his argument that the transfer of the Property from TCIF to VRF violated PUFTA. (See, e.g., id. at 10.) Significantly, Barry made no effort at the hearing to justify his serial filings, and neither Barry nor Patricia have attempted to justify their serial bankruptcy petitions in their filings with this Court.

Under these circumstances, we have no basis on which to conclude that the bankruptcy court

abused its discretion by limiting the Grays' future bankruptcy filings.  Indeed, upon consideration

of both Barry's and Patricia's multiple bankruptcy petitions, and the informed reasoning set forth by

Chief Judge Raslavich at the June 15 hearings, we conclude that the bankruptcy court did not abuse

its discretion in requiring each Gray to seek leave before filing any further petitions.[5]  We therefore

affirm the orders of the bankruptcy court insofar as they limited the Grays' ability to file future

bankruptcy petitions.

        D.        Motions for Injunctions

        VRF has moved for the entry of additional injunctions that would:  1) prevent the Grays from

filing suit in federal district court without leave of the Court;[6] and 2) prevent the Grays from filing

suits in state court without leave of this Court and, at the same time, dismiss pending state court

actions.  VRF argues that the All Writs Act empowers us to issue the requested injunctions with

respect to federal court proceedings, and that the Anti-Injunction Act gives us the power to issue the

requested injunctions concerning state court proceedings.

        1.        All Writs Act

        In seeking injunctions under the All Writs Act, VRF emphasizes that there are at least 38

separate state and federal dockets reflecting litigation arising from the foreclosure of the Grays'

home, six of which are federal district court actions.  However, in spite of the Grays' apparent

---

      [5] We emphasize that we considered only Patricia's history when reviewing the injunction against her and only Barry's history when reviewing the injunction against him.  We note, however, that they appear to be acting in concert to frustrate the state court proceedings and that we would not consider it an abuse of discretion to consider their filings *in toto*.

      [6] Although VRF states that it is seeking an injunction prohibiting the Grays from filing further suits in *all* federal courts without leave of court, given that it has already successfully procured injunctions prohibiting the Grays from filing further bankruptcy petitions without leave of court, we read its current request as pertaining only to federal district court actions.

litigiousness, we decline at this time to enjoin them from filing further district court actions.

The All Writs Act states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.  Under the All Writs Act, a court may "issue an order restricting the filing of meritless matters by a litigant who continues with great frequency to raise meritless claims identical or similar to those that already have been adjudicated." Fullman v. Potter, 418 F. App'x 75, 77 (3d Cir. 2011) (citing In re Oliver, 682 F.2d 443, 445 (3d Cir. 1982)).  Justifications for issuing such an injunction include:  "[t]he interests of repose, finality of judgments, protection of defendants from unwarranted harassment, and concern for maintaining order in the court's dockets."  In re Oliver, 682 F.2d at 445.  Thus, the justifications for the issuance of such an injunction centers on the need to preserve judicial resources and avoid the relitigation of issues. Id.

Significantly, litigiousness alone does not support an injunction restricting one's ability to file cases. Id. at 446.  Rather, an injunction should only issue upon a finding of "a continuous pattern of groundless and vexatious litigation" and, even then, courts must remain mindful that "[a]ccess to the courts is a fundamental tenet of our judicial system." Id.  An order enjoining a party from filing further suits is "'an extreme remedy and should be used only in exigent circumstances.'" Gagliardi v. McWilliams, 834 F.2d 81, 83 (3d Cir. 1987) (quoting In re Oliver, 682 F.2d at 445).

VRF states that the Grays have been involved in over 38 actions or appeals since the commencement of foreclosure proceedings in 2001.[7]  However, most of these actions were in state court and several were in federal bankruptcy court.  None of the state and bankruptcy court actions

[7] VRF summarizes the Grays' litigation history in Exhibit A to each of its motions.

reflect a tendency to file frivolous suits in federal district court, and thus do not support enjoining the Grays from commencing actions in this court.

In federal district court, the Grays have been involved in six actions relating to the foreclosure proceedings (not including the instant appeals).[8] However, in three of these actions, the Grays were *defendants*, so these three actions do not weigh in favor of a conclusion that the Grays themselves instituted vexatious and meritless litigation in the federal district court. Accordingly, the Grays have initiated just three actions in federal district court. All three have been dismissed, two as barred by the Rooker-Feldman doctrine, and one for failure to prosecute. Furthermore, all were resolved rather summarily, without significant expenditure of federal judicial resources, and none have resulted in the relitigation of issues previously decided. Under these circumstances, we conclude that the "extreme remedy" of an injunction is neither necessary nor prudent. We therefore deny VRF's motions insofar as they request that we enjoin the Grays from filing future actions in the federal district court.

2.      Anti-Injunction Act

VRF also seeks injunctions dismissing the Grays' state law actions and preventing the Grays from litigating further in state court. VRF argues that two of the three exceptions to the Anti-Injunction Act provide this Court with the power to prevent the Grays from further pursuing their

---

[8] The cases are:  TCIF v. Gray, 346 F. App'x 763, 766 (3d Cir. 2009) (affirming denial of removal); Gray v. Yavil, Civ. A. No. 11-2518 (E.D. Pa. Oct. 3, 2011) (order dismissing case for lack of prosecution); Gray v. Martinez, Civ A. No. 08-2603, 2011 WL 4389543, at *4 (E.D. Pa. Sep. 21, 2011) (order dismissing case because Rooker-Feldman bars relitigation of state court claims); Liquidation Props. v. Jackson, Civ. A. No. 09-5528 (E.D. Pa. Oct. 25, 2010) (order remanding for lack of subject matter jurisdiction); First Union Nat'l Bank v. Gray, Civ. A.  No. 07-2948 (E.D. Pa. July 30, 2007) (same);  Gray v. Pagano, Civ. A. No. 07-2810 (E.D. Pa. July 16, 2007) (order dismissing case on grounds that Rooker-Feldman bars relitigation of state court claims, and that judicial and sovereign immunity bars suit against state judge and sheriff).

state law claims and appeals.  We disagree and conclude that we are statutorily precluded from granting the requested relief.

As discussed above, the All Writs Act authorizes us to issue injunctions, including injunctions which restrict a party's ability to file further actions.  This authority, however, is limited by the Anti-Injunction Act.  See In re Diet Drugs Prods. Liability Litig., 369 F.3d 293, 305 (3d Cir. 2004).  The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.

The Anti-Injunction Act, originally enacted in 1793, "'is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts.'"  Smith v. Bayer Corp, 131 S. Ct. 2368, 2375 (2011) (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988)).  The "Act's core message is one of respect for state courts." Id.  "The Act broadly commands that those tribunals 'shall remain free from interference by federal courts.'"  Id. (quoting Atl. Coast Line R. Co. v. Locomotive Eng'rs, 398 U.S. 281, 282 (1970)).  In the instant case, although the injunctions that VRF requests would be against the Grays, the Anti-Injunction Act still applies because the injunctions would be directed at state court proceedings.  See Atl. Coast Line R. Co., 398 U.S. at 287 (citations omitted) ("It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties . . . .").

The Anti-Injunction Act contains three exceptions to its broad command of non-interference with state courts.  Smith, 131 S. Ct. at 2375.  Those exceptions allow a federal court to enjoin state court proceedings only 1) when expressly authorized by Act of Congress; 2) where necessary in aid of the federal court's jurisdiction; or 3) to protect or effectuate the federal court's judgments.  See

28 U.S.C. § 2283.  These exceptions, "though designed for important purposes, 'are narrow and are not [to] be enlarged by loose statutory construction.'"  Smith, 131 S. Ct. at 2375 (alteration in original) (citation omitted) (quoting Chick Kam Choo, 486 U.S. at 146).  "'[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed.'"  Id. at 2375 (quoting Atl. Coast Line, 398 U.S. at 297).

VRF argues that the second exception, the "in aid of jurisdiction" exception, applies here because we need to protect our jurisdiction over the Property.  We disagree.  "The 'in aid of jurisdiction' exception applies to preclude parallel state *in rem* proceedings . . . ."  In re Linerboard Antitrust Litig., 361 F. App'x 392, 395 (3d Cir. 2010).  However, an injunction is warranted only when the federal court obtains jurisdiction over the property before the state court, i.e., when the federal court action predates the state court action.  17A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 4225 (3d ed. 2011); see also Kline v. Burke Constr. Co., 260 U.S. 226, 229 (1922).  Furthermore, an injunction under this exception is only necessary if the state court proceedings "so interfer[e] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."  In re Diet Drugs, 369 F.3d at 304 (quotations omitted).

VRF does not identify any particular state court action that could interfere with our disposition of these bankruptcy appeals.  VRF is ostensibly concerned with the state court action in ejectment, which is currently on appeal.  However, this action predates these bankruptcy actions, so the "in aid of jurisdiction" exception is inapplicable.  Furthermore, we are only called upon in the instant appeals to decide whether the bankruptcy court erred in lifting the automatic stays and in enjoining the Grays from filing further bankruptcy petitions.  VRF raises no possible scenarios, and we can think of none, where a state court proceeding could threaten our ability to decide and

implement our disposition of the issues in these appeals.  Thus, the "in aid of jurisdiction" exception to the Anti-Injunction Act does not provide grounds for the requested injunctive relief.

VRF also argues that the third exception, the "relitigation exception," applies.  The relitigation exception is "designed to implement 'well-recognized concepts' of claim and issue preclusion." Smith, 131 S. Ct. at 2375 (quoting Chick Kam Choo, 486 U.S. at 147).  An injunction can be issued under this exception "to prevent state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'" Id. (quoting Chick Kam Choo, 486 U.S. at 147).  Issuing an injunction under this provision "is resorting to heavy artillery" and "an injunction can issue only if preclusion is clear beyond peradventure." Id.

VRF did not identify a single issue or claim decided by a federal court that is being relitigated in a state court.  It is quite unlikely that the issues of whether the bankruptcy court erred in lifting the automatic stay or enjoining the Grays will be litigated before a state court.  In addition, although the Grays have been involved in other suits in federal courts, none of the issues decided in those cases are currently being litigated in state court, and VRF does not suggest that these issues are likely to be litigated in state court.  Indeed, the only issue that has been decided in federal court to this point is that the Rooker-Feldman doctrine precludes review state court actions, an issue exclusive to the federal courts. See Gray v. Martinez, Civ A. No. 08-2603, 2011 WL 4389543, at *4 (E.D. Pa. Sep. 21, 2011) (Rooker-Feldman bars relitigation of state court claims); Gray v. Pagano, Civ. A. No. 07-2810, Docket No. 2 (E.D. Pa. July 16, 2007) (same).  We therefore conclude that no federal court has decided an issue that is currently or is likely to be relitigated in state court, and thus the relitigation exception does not authorize this Court to enjoin any state court proceedings.

In sum, the Anti-Injunction Act prohibits this Court from enjoining any state court proceedings because none of the exceptions under the Act authorize such action.  Therefore, because

VRF has not shown the necessity of an injunction under the All Writs Act with respect to the federal courts, and because the Anti-Injunction Act precludes us from enjoining the state court proceedings, we deny VRF's motions for injunctions.

## V.   CONCLUSION

For the foregoing reasons, the bankruptcy court orders are affirmed in all respects.   The motions for injunctive relief are denied.   Appropriate Orders follow.

BY THE COURT:

 /s/ John R. Padova
John R. Padova, J.